IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST; BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND; BOILERMAKERS NATIONAL ANNUITY TRUST; JOHN FULTZ as a fiduciary of the BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST, BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND, and BOILERMAKERS NATIONAL ANNUITY TRUST,<br><br>            Plaintiffs,<br>vs.<br><br>MATRIX NORTH AMERICAN CONSTRUCTION, INC.,<br><br>            Defendant. | Case No.  2:19-cv-2370 |

**COMPLAINT**

Plaintiffs, for their cause of action against Defendant, Matrix North American Construction, Inc., state as follows:

**PLAINTIFFS' REQUEST FOR PLACE OF TRIAL**

1. Pursuant to District of Kansas Rule 40.2, Plaintiffs hereby request that trial in this matter be held in Kansas City, Kansas.

**NATURE OF THE CASE**

2. This is an action brought under §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, to collect fringe benefit contributions from the Defendant as may be due and owing to the Plaintiff Employee Benefit Plans.  Plaintiffs also bring a cause of action against Defendant for fraud, negligent misrepresentation, and fraudulent concealment.

## PARTIES

3.     Plaintiff Boilermaker-Blacksmith National Pension Trust ("the Pension Fund") is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3).  The Pension Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d).  The Pension Fund maintains its principal place of administration at 754 Minnesota Avenue, Kansas City, Kansas 66101.  The Pension Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5).

4.     Plaintiff Boilermakers National Health and Welfare Fund ("the Health & Welfare Fund") is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3).  The Health & Welfare Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d).  The Health & Welfare Fund maintains its principal place of administration at 754 Minnesota Avenue, Kansas City, Kansas 66101.  The Health & Welfare Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

5.     Plaintiff Boilermakers National Annuity Trust ("the Annuity Fund") is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3).  The Annuity Fund is a legal entity that may sue or be sued, pursuant to 29 U.S.C. § 1132(d).  The Annuity Fund maintains its principal place of administration at 754 Minnesota Avenue, Kansas City, Kansas 66101.  The Annuity Fund is a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(37) and has been established pursuant to § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

...

6. Plaintiff John Fultz is a fiduciary of the Plaintiffs Pension Fund, Health & Welfare Fund, and Annuity Fund, within the meaning of 29 U.S.C. § 1002(21), and as such, is a proper party to this action.

7. Defendant, Matrix North American Construction, Inc. is a corporation organized under and existing by virtue of the laws of the State of Oklahoma. Defendant is an employer within the meaning of 29 U.S.C. § 1002(5).

## JURISDICTION

8. The Court has subject matter jurisdiction of Plaintiffs' claims pursuant to 29 U.S.C. §§ 1132 and 1145, and also pursuant to 28 U.S.C. §§ 1331 and 1367.

9. Because Plaintiff employee benefit plans are administered in the District of Kansas, the Court has personal jurisdiction over Defendant. *See* 29 U.S.C. 1132(e)(2); Fed. R. Civ. P. 4(k).

10. Venue is appropriate in this district under 29 U.S.C. § 1132(e)(2).

## CAUSE OF ACTION

11. At all times relevant hereto, Defendant has been a party to a participation agreement with the Pension Fund, Health & Welfare Fund, and Annuity Fund.

12. The Plaintiffs Pension Fund, Health & Welfare Fund and Annuity Fund (collectively "the Funds) are established and operated pursuant to a written agreement and/or declaration of trust. These agreements and/or declarations of trust ("trust agreements") are incorporated by reference into and are a material part of the participation agreement between Defendant and the Funds. The Pension Fund is also established and maintained pursuant to a written plan document that describes the structure of the plan and the manner in which it is administered ("Plan Document").

13. Upon information and belief, at all times material and relevant to this action, Defendant has employed Mr. David Batur, who has performed covered work under the participation agreement.

14. Defendant, under the trust agreement(s), must timely submit reports and fringe benefit contributions to the Funds. Defendant must submit contributions to the Funds each month in such amounts as determined by the number of hours of covered work performed by Mr. Batur at the rates established for each of the Funds in the participation agreement.

15. The trust agreement(s) require that contributions due to the Funds are to be paid by the 15th day of the month following the month in which the work was performed, and payments are delinquent if not received by that date.

16. On November 30, 2016, Defendant sent the following fax to the Pension Fund: "To Whom It May Concern: Please be advised that effective November 30, 2016 [Mr. Batur] will no longer be employed by Matrix North American Construction, Inc."

17. The Pension Fund relied on this statement and began issuing Mr. Batur monthly pension benefits, totaling $228,616.79.

18. Under IRS regulations and rulings, and the Plan Document, the Pension Fund cannot issue pension benefits to anyone who has not reached normal retirement age and who is still working for an employer contributing to the Pension Fund.

19. But during a subsequent payroll audit of Defendant, the Funds discovered that Mr. Batur continued working after November 30, 2016.

20. In September 2017, the Funds notified Defendant that they were terminating the participation agreement as of December 31, 2017.

21. For work performed from December 1, 2016 to December 31, 2017, Defendant is liable to the Funds for contributions in the amount of $51,575.02.

## COUNT I: FAILURE TO PAY TIMELY FRINGE BENEFIT CONTRIBUTIONS

22. Plaintiffs restate and reallege paragraphs 1 through 21 as if fully set forth herein.

23. The participation agreement, the trust agreements, and ERISA provide remedies to the Funds in the event an employer fails to make required contributions. Among the remedies available are costs of collection, attorneys' fees, interest, and liquidated damages.

24. Pursuant to the participation agreement and the trust agreements incorporated therein, Defendant is liable to the Funds for liquidated damages of twelve percent (12%) of the delinquent contributions. Accordingly, Defendant is liable to the Funds for liquidated damages in the amount of $6,189.02 upon the delinquent contributions for the hours of covered work performed during December 2016 through December 2017.

25. Pursuant to the participation agreement and the trust agreements incorporated therein, Defendant is liable to the Funds for interest at the rate of twelve percent (12%) *per annum* upon the delinquent contributions and the liquidated damages. Accordingly, as of June 21, 2019, Defendant is liable to the Funds for accrued interest in the amount of $13,089.93 upon the delinquent contributions for the hours of covered work performed during December 2016 through December 2017 and the liquidated damages thereon. Interest continues to accrue.

26. The Funds have incurred attorneys' fees and other costs in their efforts to remedy Defendant's failure to pay fringe benefit contributions. The Funds are entitled to recover these fees and costs pursuant to the terms of the participation agreement and by law.

## COUNT II: FRAUD

27. Plaintiffs restate and reallege paragraphs 1 through 26 as if fully set forth herein.

28. Under Kansas law, a defendant commits fraud when (1) it falsely represents an existing and material fact, (2) it made its false statement intentionally or recklessly, (3) it

intended for the recipient to act upon its statement, (4) the recipient reasonably relied and acted upon the statement, and (5) the recipient sustained damages by relying upon the statement.

29. Here, Defendant falsely represented that Mr. Batur no longer worked for it. Upon information and belief, it knew this representation was false and it intended for the Pension Fund to act upon the statement. The Pension Fund reasonably relied upon the statement and began issuing pension benefits. These pension benefits were improperly issued and the Pension Fund now must recoup the overpayment.

## COUNT III: NEGLIGENT MISREPRESENTATION

30. Plaintiffs restate and reallege paragraphs 1 through 29 as if fully set forth herein.

31. Under Kansas law, a defendant commits negligent misrepresentation when (1) it makes a false statement of fact, (2) it fails to exercise reasonable care or competence in obtaining or communicating that fact, (3) the recipient of the false information reasonably relied on it, (4) defendant made the statement for the recipient's benefit and guidance, and (5) the recipient suffered damages.

32. Here, Defendant falsely represented that Mr. Batur no longer worked for it. In the alternative to Count II, upon information and belief, Defendant made this statement without exercising reasonable care or competence in obtaining it. Defendant supplied this false information to the Pension Fund for the Pension Fund's benefit and guidance. The Pension Fund relied on that information and began improperly issuing pension checks to Mr. Batur. The Pension Fund has suffered damages because it must recoup the payments.

## COUNT IV: FRAUDULENT CONCEALMENT

33. Plaintiffs restate and reallege paragraphs 1 through 32 as if fully set forth herein.

34. Under Kansas law, a Defendant commits fraudulent concealment when it fails to disclose a fact to someone who justifiably relies on such non-disclosure when Defendant has a duty to exercise reasonable care to disclose the fact. *Bank of Am., N.A. v. Narula*, 261 P.3d 898, 911 (Kan. Ct. App. 2011).

35. Defendant must exercise reasonable care to disclose a fact when it informs someone of a fact, and then later learns a fact that it knows will make its previous statement untrue or misleading. *Id.*

36. Here, Defendant informed the Pension Fund that Mr. Batur no longer worked for it. This caused the Pension Fund to begin issuing pension checks to Mr. Batur. In the alternative to Counts II and III, upon information and belief, Defendant subsequently learned that Mr. Batur would be returning to work, yet it never corrected its statement to Pension Fund. This silence has caused the Pension Fund to suffer damages.

**WHEREFORE,** Plaintiffs pray that the Court enter an Order:

a) Finding that Defendant is liable to the Plaintiff Funds in the amount of $70,853.97) (contributions - $51,575.02; liquidated damages - $6,189.02, and interest accrued through June 21, 2019 - $13,089.93) and entering judgment against Matrix NAC and in favor of the Plaintiffs for these amounts, plus interest that accrues from June 21, 2019 through the date judgment is entered;

b) Finding that Defendant is liable to the Pension Fund for $228,616.79 for the Pension payments the Pension Fund erroneously made in response to Defendant's fax of November 30, 2016;

c) Awarding the Plaintiffs their costs of this action, including Plaintiffs' reasonable attorney's fees; and

        d)       Granting the Plaintiffs such other relief that the Court deems just and proper, including interest that accrues during the pending of this action.

        Respectfully submitted,

**BLAKE & UHLIG, P.A.**
753 State Avenue, Suite 475
Kansas City, Kansas 66101
Telephone:  (913) 321-8884
Facsimile:  (913) 321-2396

By     /s/ Nathan A. Kakazu
Nathan A. Kakazu, D. Kan. 78803
**ATTORNEY FOR PLAINTIFFS**