# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST; BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND; BOILERMAKERS NATIONAL ANNUITY TRUST; JOHN FULTZ** as a fiduciary of the **BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST; BOILERMAKERS NATIONAL HEALTH AND WELFARE FUND; BOILERMAKERS NATIONAL ANNUITY TRUST ,**<br><br>Plaintiffs,<br><br>v.<br><br>**MATRIX NORTH AMERICAN CONSTRUCTION, INC.,**<br><br>Defendant. | Case No. 19-CV-2370-JAR-TJJ |

## MEMORANDUM AND ORDER

Before the Court is Defendant Matrix North American Construction, Inc.'s, ("Defendant") Partial Motion to Dismiss for failure to state a claim (Doc. 4) in Counts II, III, and IV of the Complaint (Doc. 1) of Plaintiffs Boilermaker-Blacksmith National Pension Trust, Boilermakers National Health and Welfare Fund, Boilermakers National Annuity Trust, and John Fultz, in his capacity as a fiduciary (collectively "Plaintiffs").

In addition to a claim under the Employee Retirement Income Security Act of 1974 ("ERISA")[1] in Count I, Plaintiffs claim in Counts II-IV that under Kansas common law, Defendant fraudulently represented—and in the alternative negligently misrepresented or

---
[1] 29 U.S.C. §§ 1132, 1145. *See* (Doc. 1).

fraudulently concealed—the employment status of one of its employees. Plaintiffs allege this resulted in the employee's unlawful receipt of fringe benefits from Plaintiff Boilermaker-Blacksmith National Pension Trust ("Pension Trust") and unpaid pension contributions to Pension Trust from Defendant on behalf of the employee. Defendant moves to dismiss all three tort claims (Counts II-IV) arguing they are preempted by ERISA.[2] The Court finds this question is not appropriate for a motion to dismiss and is better suited for a summary judgment motion. In turn, Defendant's Partial Motion to Dismiss is denied.

## I. Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[3] and must include "enough facts to state a claim for relief that is plausible on its face."[4] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[6] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7] Finally, the court must accept the nonmoving party's factual

---

[2] 29 U.S.C. § 1144; Doc. 4.

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[4] *Id*. at 570.

[5] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[7] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[9] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

## II. Factual Allegations

The following facts are alleged in Plaintiffs' complaint and are assumed to be true for the purposes of deciding Plaintiffs' motion to dismiss.

Plaintiff Pension Trust is an "employee benefit plan" and Defendant is an "employer" under ERISA.[13] Defendant was at all relevant times party to a participation agreement with Pension Trust, under which the Trust would administer pension benefits to Defendant's employees.

---

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[9] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[10] *Id.* at 678–79.

[11] *Id.* at 679.

[12] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[13] 29 U.S.C. § 1002(3); *Id.* § 1002(5)

Plaintiffs allege that Defendant employed Mr. David Batur, who performed work that qualified him to participate in the Pension Trust benefit program through Defendant. The trust agreement(s) between Defendant and Pension Trust require Defendant, as Mr. Batur's employer, to submit contributions to the Pension Trust during each month Mr. Batur was employed by Defendant. The monthly amount was determined by the number of hours of work performed by Mr. Batur. Trust agreement(s) require that monthly contributions to Pension Funds are to be paid by the fifteenth day of the month following the month in which the work was performed. Payments not received by that date are deemed delinquent.

Defendant informed Pension Trust on November 30, 2016 that Mr. Batur would "no longer be employed" by Defendant. After receiving this statement, Pension Trust began issuing Mr. Batur monthly pension benefits, totaling $228,616.79, and stopped collecting monthly contributions from Defendant on behalf of Mr. Batur.

Under the participation agreement, an employee is not eligible to receive pension benefits if he has not reached normal retirement age and is still working for an employer contributing to Pension Trust. Yet, during a payroll audit of Defendant, Pension Trust discovered that Mr. Batur continued working for Defendant after November 30, 2016. In September 2017, Plaintiffs informed Defendant it was terminating the participation agreement as of December 31, 2017.

Plaintiffs allege Defendant is liable to Plaintiffs for unpaid contributions of work performed by Mr. Batur from December 1, 2016 to December 31, 2017, associated liquidated damages, and interest accrued.[14] Further, Plaintiffs allege Defendant is liable to Pension Trust for the pension payments the Pension Fund erroneously made to Mr. Batur after receiving the

---

[14] Plaintiffs seek $51,575.02 for work performed by Mr. Batur from December 1, 2016 to December 31, 2017, liquidated damages of $6,189.02, and $13,089.93 in interest accrued through June 21, 2019. Doc. 1 at 7.

November 30 fax that Mr. Batur was no longer employed by Defendant.[15]  Additionally, Plaintiffs seek costs of litigation including Plaintiffs' reasonable attorney's fees and interest that accrues during the pendency of this action.

**III.     Analysis**

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered in the Act.[16]  A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan."[17]  Although ERISA's preemption clause is "deliberately expansive,"[18] Congress did not intend to "derogate[] state regulation."[19]  Courts must "address[] claims of pre-emption with the starting presumption that Congress does not intend to supplant state law."[20]  A state law has an impermissible "reference to" an ERISA plan when it "acts immediately and exclusively upon ERISA plans. . . or where the existence of ERISA plans is essential to the law's operation."[21]  An impermissible "connection with" an ERISA plan occurs when a state law governs a central matter of plan administration or interferes with national uniformity of plan administration.[22]  "The defendant has the burden of proving the preemption defense."[23]

Defendant argues Plaintiffs' state-law tort claims in Counts II, III, and IV, are preempted by ERISA because "[t]hey "plainly 'relate to' the administration of pension benefits under the

---

[15] Plaintiffs seek $228,616.79 for reimbursement of pension payments made to Mr. Batur.

[16] 29 U.S.C. § 1144(a).

[17] *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97 (1983).

[18] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).

[19] *N.Y. State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).

[20] *Id.*

[21] *California Div. of Labor Standards Enf't v. Dillingham Const. N.A., Inc.,* 519 U.S. 316, 325 (1995).

[22] *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001); *Id.* at 142.

[23] *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508 (10th Cir. 1991).

5

employee benefits plan."[24] It argues a state law claim relates to an ERISA plan if "evaluation of a claim 'would require resort to the terms of the ERISA plan.'"[25] It further argues, the tort claims require the Court to analyze Pension Trust's Plan Document to determine "whether Defendant owes contributions or reimbursements to the [Pension] Funds for work allegedly performed by an individual formerly in its employ."[26] Specifically, Defendant argues in its reply brief[27] the Court must look to the Plan Document to determine whether Mr. Batur was "employed" under the Plan Document's definition of employment (for purposes of disqualification for pension benefits) to determine whether "Defendant falsely represented that Mr. Batur no longer worked for it."[28]

"A district court may grant judgment as a matter of law under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense like preemption when the law compels that result."[29] However, in the context of a Rule 12(b)(6) motion to dismiss, the Court may only consider the complaint itself, attached exhibits, and documents incorporated into the complaint by reference that are central to Plaintiffs' claim.[30] Plaintiffs did not attach the Plan Document to its complaint. Nor is the Plan Document, as pled, central to any of Plaintiffs' claims. Instead, defendant attached the Plan Document in its reply. As such, the Court does not consider it under the 12(b)(6) analysis.

---

[24] Doc. 5 at 3.

[25] Doc. 5 at 6 (citing *Penyak v. UNUM Life Ins. Co. of Am.*, No. 97-2117, 1998 U.S. Dist. LEXIS 5023, at *14-15 (D. Kan. Mar. 12, 1998).

[26] Doc 5 at 2.

[27] Doc. 18 at 4.

[28] Doc. 1 ¶¶ 29, 32.

[29] *Caplinger v. Medtronic, Inc.*, 784 F.3d 1135, 1341 (10th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 1999, 212-15 (2017)).

[30] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

6

Further, the Court declines to convert Defendant's Motion to Dismiss to one for Summary Judgement by considering the Plan Document at this stage. "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court' and 'all parties are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[31] Yet, the Court "may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment."[32] Thus, the mere fact that Plaintiffs mention the "Plan Document" in their complaint without attaching it does not require the Court to automatically convert Defendant's Motion to Dismiss into a summary judgment Motion.

Taking Plaintiffs' "factual allegations in the complaint as true," there is no need for the Court to examine the terms of the Plan Document. Plaintiffs' allegation that Mr. Batur was employed by Defendant after November 30th made no reference to the Plan Document. Such pleading is entitled to a presumption of truth for purposes of a 12(b)(6) motion. Therefore, because Plaintiffs have also plead that (1) Defendants notified Pension Trust that Mr. Batur was "no longer employed" by Defendant, (2) Pension Trust reasonably relied on that statement in issuing monthly pension payments and ceasing collection of monthly contributions, and (3) Pension Trust sustained damages for payments made and contributions not received, Plaintiffs have stated a claim that "plausibly give[s] rise to an entitlement to relief." As pled, Plaintiffs' claims do not act "immediately and exclusively upon ERISA plans" do not govern a "central

---

[31] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (alterations omitted) (quoting Fed. R. Civ. P. 12(b)).

[32] *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).

matter of plan administration," nor interfere with national uniformity in ERISA plan administration.

The Court concludes that the summary judgment stage is more appropriate to address the question of whether evaluation of the Plan Document is necessary to Plaintiffs' state law claims, and whether such evaluation meets the "relates to" standard and is preempted by ERISA. Accordingly, the Court denies Defendant's Partial Motion to Dismiss under Rule 12(b)(6) and invites the parties to address the issue of ERISA preemption on cross-motions for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Partial Motion to Dismiss (Doc 4.) **is denied.**

**IT IS SO ORDERED.**

Dated: October 1, 2019

                                                   S/ Julie A. Robinson
                                                   JULIE A. ROBINSON
                                                   CHIEF UNITED STATES DISTRICT JUDGE